1  BENJAMIN B. WAGNER
   United States Attorney
2  TODD A. PICKLES
   ROSANNE L. RUST
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile:  (916) 554-2900

**FILED**

JUL 2 4 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

6
   Attorneys for Plaintiff
7  United States of America

8            IN THE UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,          CASE NO. 2:15 - CR . 1 4 6 KJM

12                   Plaintiff,        VIOLATION: 18 U.S.C. § 371 (Conspiracy To
                                       Commit Bribery And To Commit Identity Fraud); 18
13         v.                          U.S.C. §§ 982(a)(2)(B) and 1028(b)(5) – Criminal
                                       Forfeiture
14 KULWINDER DOSANJH SINGH,
      aka "Sandhu," aka "Sodhi,"
15
                    Defendant.
16

17

18            I N F O R M A T I O N

19 COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Commit Bribery And To Commit Identity Fraud]

20      The United States Attorney charges:

21                 KULWINDER DOSANJH SINGH,
                        aka "Sandhu,"
22                      aka "Sodhi,"

23      defendant herein,

24      1.    Beginning no later than April 2013, and continuing through at least March 2015, in the

25 Counties of Sacramento and Stanislaus, State and Eastern District of California, and elsewhere, did

26 knowingly and intentionally conspire with others known and unknown to commit bribery concerning

27 programs receiving federal funds, in violation of Title 18, United States Code sections 666(a)(1)(B) and

28 666(a)(2), and to commit identity fraud, in violation of Title 18, United States Code section 1028(a)(1).

INFORMATION                          1

2.     At all relevant times, the California Department of Motor Vehicles (DMV) was a political subdivision and agency of the State of California that registered vehicles in California and licensed California drivers. The DMV also issued identification cards for individuals in California. The DMV was funded by vehicle registration and licensing fees paid by residents and licensees of the State of California. The DMV also received federal grants, including the following grant money:

| Fiscal Year (July 1 – June 30) | Total Approximate Amount of Federal Funds |
|---|---|
| 2011-2012 | $2,500,000 |
| 2012-2013 | $726,000 |
| 2013-2014 | $4,000,000 |
| 2014-2015 | $800,000 |

3.     The DMV issued various classes of driver licenses, including Class A, Class B, and Class C, based primarily on the type of vehicle to be operated.

4.     Class A and Class B California driver licenses (CDL) licensed a driver to operate a commercial vehicle in California. A Class A commercial CDL licensed a driver to operate motor vehicles weighing more than 26,001 pounds, including vehicles that tow trailers or more than one vehicle, and vehicles that transport hazardous waste. A Class B commercial CDL also licensed a driver to operate vehicles that weigh more than 26,001 pounds, but because of the towing capacity requirements, only drivers with a Class A CDL were permitted to drive an 18-wheel tractor trailer. In contrast, a Class B CDL licensed a driver to operate a straight truck or bus, but did not allow the driver to pull a tractor trailer.

5.     A Class C California Driver License licensed a driver to operate a motor vehicle weighing less than 26,000 pounds, including ordinary passenger cars.

6.     The issuance of a Class A, Class B, or Class C CDL affected interstate commerce in that, among other effects, the licenses enabled recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

7.     To obtain a Class A or Class B CDL, an applicant was required to submit to the DMV a medical certification and pay an application fee, after which an electronic record was generated in the DMV's computer database for the applicant.

8.      Thereafter, the applicant was required to pass one or more written examinations based on the type of license. The DMV administered written examinations at most DMV locations.

9.      After an applicant passed the necessary written examinations for a Class A, Class B, or Class C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results. Passing the written portion of the examination would typically result in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

10.     The behind-the-wheel driving examination was administered by a Licensing-Registration Examiner ("LRE") for the DMV. The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at select DMV locations in California, including Salinas, California. In contrast, the DMV typically administered behind-the-wheel driving examinations for a Class C general CDL available at most DMV locations.

11.     After the applicant passed the requisite behind-the-wheel driving examination administered by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results. The DMV would then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered.

12.     Thereafter, an official, hard plastic CDL was printed in Sacramento, California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

13.     The objects of the aforementioned conspiracy were to provide payment of money to employees of the DMV in order to obtain CDLs for individuals who were not otherwise qualified to obtain the licenses, in violation of Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2), and to produce identification documents without lawful authority, in violation of Title 18, United States Code section 1028(a)(1).

14.     The objects of the conspiracy were carried out, in substance, as follows:

        a.      In summary, beginning in at least June 2011, and continuing through at least April 2015, truck driving students and others (hereinafter collectively "students") were solicited by the

1  defendant KULWINDER DOSANJH SINGH aka "Sandhu" aka "Sodhi," (hereinafter "KULWINDER

2  DOSANJH") and other brokers (hereinafter "broker co-conspirators") to pay KULWINDER DOSANJH

3  and the other broker co-conspirators money in exchange for obtaining for the students Class A, Class B,

4  and Class C CDLs without the students having to take or pass the written and behind-the-wheel driving

5  examinations.

6         b.      The KULWINDER DOSANJH and other broker co-conspirators, in turn, paid or

7  caused to be paid money to DMV employees (hereinafter "DMV co-conspirators") for the DMV co-

8  conspirators to access and alter the students' electronic DMV records to incorrectly and fraudulently

9  indicate that the students had passed examinations that, in truth and in fact, the students had not taken or

10  passed, and which, therefore, caused DMV to issue CDLs to the students who had not completed the

11  necessary requirements to receive such licenses.

12         c.      From at least April 2013 through at least March 2015, the DMV co-conspirators

13  repeatedly accessed the DMV computer database and altered electronic DMV records to incorrectly and

14  fraudulently indicate that the students had passed the behind-the-wheel driving examinations for Class

15  A, Class B, and Class C CDLs when, in truth and in fact, the students had not taken or passed the

16  behind-the-wheel driving examinations.  The DMV co-conspirators also repeatedly accessed the DMV

17  computer database and altered DMV records to incorrectly and fraudulently indicate that the students

18  had passed the written examinations for Class A, Class B, and Class C CDLs when, in truth and in fact,

19  the students had not taken or passed the written examinations.

20       15.    In furtherance of the conspiracy and to accomplish its objects, KULWINDER DOSANJH

21  and others committed and caused to be committed the following overt acts, among others, in the State

22  and Eastern District of California and elsewhere:

23         a.      On or about June 18, 2013, a DMV co-conspirator, without authorization, altered

24  the electronic DMV record for an individual (hereinafter "Person A") to incorrectly indicate that Person

25  A had taken and passed the behind-the-wheel driving examination for a Class A commercial CDL.

26         b.      On or about June 20, 2013, an official, plastic hardcopy Class A CDL for Person

27  A was printed in Sacramento, California.

28

INFORMATION                                4

c.     On or about June 26, 2013, Person A met with KULWINDER DOSANJH and paid KULWINDER DOSANJH $5,000 in exchange for receipt of the Class A CDL.

All in violation of Title 18, United States Code Section 371.

FORFEITURE ALLEGATION:        [18 U.S.C. §§ 982(a)(2), 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.     Upon conviction of the offense alleged in Count One of the Information, defendant KULWINDER DOSANJH shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), § 982(a)(2)(B) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to a sum of money equal to the total amount of money involved in the offenses, for which the defendant is convicted.

2.     If any property subject to forfeiture, as a result of the offenses alleged in Count of this Information, for which the defendant is convicted:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

Dated:  July 24, 2015                          BENJAMIN B. WAGNER
                                               United States Attorney


                                        By:    _____
                                               TODD A. PICKLES
                                               ROSANNE L. RUST
                                               Assistant United States Attorneys

*United States v. Kulwinder Dosanjh Singh*

## **Penalties For Information**

| | |
|---|---|
| **COUNT 1:** | **Kulwinder Dosanjh Singh** |
| VIOLATION: | 18 U.S.C. § 371 - Conspiracy to Commit Bribery and to Commit Identity Fraud |
| PENALTIES: | A maximum of 5 years of imprisonment; or Fine of up to $250,000; or both fine and imprisonment Supervised release of up to three years |
| FOREFEITURE: | As stated in information |
| SPECIAL ASSESSMENT: | $100 (mandatory on each count) |